UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-23580-ALTMAN/REID

BRUNSWICK RECORDS CORP., a Foreign
Corporation, and EXUMA MUSIC PUBLISHING,
LLC, a Florida Limited Liability Company,

    Plaintiffs,

v.

LASTRADA ENTERTAINMENT CO., LTD.,
d/b/a LASTRADA MUSIC, and
STEPHEN MOELIS,

    Defendants.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DIMISS

This cause is before the Court upon Defendants Lastrada Entertainment Co. Ltd ("Lastrada") and Stephen Moelis's ("Moelis") Motion to Dismiss (the "Motion") Plaintiffs' Complaint for failure to state a claim, improper service of process on Moelis, and lack of personal jurisdiction. [ECF No. 21]. The Motion was referred to the Undersigned by the Honorable Roy K. Altman for a Report and Recommendation. [ECF No. 38]. For the reasons discussed below it is recommended that the Motion be **GRANTED,** and the case be **TRANSFERRED** to the United States District Court for the Southern District of New York.

## BACKGROUND

This is a copyright infringement case. The dispute revolves around the ownership rights to a song composed in 1979 by Jerome Bell ("Bell"), Gregory Buford ("Buford"), and Vaughn Mason ("Mason") entitled "Vinzerrelli's Bounce, aka 'Bounce Rock Roll Skate'' ("Bounce"). [ECF No.

1

1 at 3-4]. Plaintiffs Brunswick Records Corp. ('Brunswick"), a foreign corporation with its principal place of business in Miami, Florida, and Exuma Music Publishing, LLC ("Exuma"), a Florida corporation based in Miami, Florida, contend they own the sound recording and underlying composition rights to Bounce. [*Id.*]. Plaintiff Brunswick alleges it purchased the master sound recording rights to Bounce from Bell, Buford, and Mason in 1980. [*Id.*]. Brunswick registered its claim to the sound recording copyright and remains the sole owner of the rights to the sound recording copyright. [*Id.*]. Plaintiff Exuma alleges it acquired the underlying composition rights to Bounce through assignment from Tarnopol Music Inc. and Lena Music who had in turn purchased the composition rights from Bell, Buford and Mason in 1980. [*Id.*]; *see also* [ECF No. 1-2].

Since the purchase of the rights to Bounce in 1980, Brunswick and Exuma (through its predecessors) "publicly exploited the master recording copyright and composition copyright to [Bounce] … by selling recordings, advertising and streaming in public websites such as Apple Music, Spotify and the like by licensing certain rights." [*Id.*].

The issue here, however, is that another entity, Defendant Lastrada and its President Stephen Moelis claim to have ownership interests in Bounce as well. [*Id.*]. Lastrada alleges it entered into an agreement in 2001 with Buford and Mason for the assignment of the composition copyright to Bounce. [*Id.*]. Plaintiffs Brunswick and Exuma, however, contend Bell, Buford, and Mason had already "conveyed 100% of both the Master Recording and Composition copyrights … to Brunswick and Lena." [*Id.*].

Plaintiffs explain that Lastrada "has been falsely representing to various third-parties in the music industry … that: a) Lastrada owns the copyright to the composition to [Bounce]; b) Brunswick does not have <u>any</u> rights to exploit or assign and sub-license the right to distribute the Master Recoding copyright to [Bounce]' and c) Exuma (and its predecessors) do not own exclusive

rights to the composition copyrights to [Bounce]." [*Id.*] (emphasis in original). Lastrada has also represented that it is the partial owner of the Bounce composition copyright on various websites. [*Id.* at 5]. Because of Lastrada's representations many third-party streaming and music distribution platforms "have removed Plaintiffs' Master Recordings from their platforms, and certain licensees and performing rights organizations, such as BMI have wrongfully paid monies belonging to Plaintiffs to … Lastrada, causing Plaintiffs to suffer damages." [*Id.*].

As a result of this dispute Plaintiffs filed this action against Lastrada and Moelis. *See generally* [*Id.*]. Plaintiffs seeks a declaratory judgment from this Court providing that Lastrada "has violated the requirements of the U.S. Copyright Act and, further enjoining it from engaging in such conduct." [*Id.* at 5]. Further, Plaintiffs bring a direct claim of copyright infringement against Lastrada and a derivative claim against Moelis "as the person who controls the infringing activities of Lastrada" and seek "damages pursuant to Section 504 of the Copyright Act, jointly and severally, against Lastrada and Moelis." [*Id.* at 7].

Defendants' raise three arguments in support of their Motion to Dismiss: (1) Plaintiffs have failed to adequately state a claim of copyright infringement under Federal Rule of Civil Procedure 12(b)(6); (2) Plaintiffs never adequately served Moelis and thus dismissal is warranted under Rule 12(b)(5); and (3) this Court lacks personal jurisdiction over Defendants and therefore the case must be dismissed under Rule 12(b)(2). *See generally* [*Id.*]. Lastrada is a New York corporation and has its principal place of business there, and Moelis claims to reside in New York. [ECF No. 21 at 2]. Plaintiffs have filed a Response in which do not dispute that personal jurisdiction and venue for this action exist in the Southern District of New York. [ECF No. 30 at 8]. Defendants have filed a Reply [ECF No. 31].

For the reasons provided below, Defendants' personal jurisdiction argument will be the focus of this Report.

## LEGAL STANDARD

### I. Personal Jurisdiction

A plaintiff bringing claims against a non-resident defendant bears the initial burden of including facts in the complaint sufficient to establish a *prima facie* case of personal jurisdiction. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

"A plaintiff seeking to establish personal jurisdiction over a nonresident 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "Once the plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1388 (S.D. Fla. 2014), *aff'd sub nom. Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. 2015).

Where the defendant produces evidence countering the plaintiff's claims, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *see also Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). To satisfy this burden, the plaintiff must substantiate the allegations made in the complaint through competent proof, rather than realleging the factual allegations made in the complaint. *Polskie Linie Oceaniczne v. Seasage Transp. A/S/*, 795 F.2d 968, 972 (11th Cir. 1986).

When evaluating whether personal jurisdiction over a nonresident defendant exists, "[t]he district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara v. Hall*, 916 F.3d 1510, 1514 (11th Cir. 1990) (internal citation omitted). "[W]here the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *Id.*

## DICUSSION

### I. Personal Jurisdiction

Courts apply a two-part test to determine whether it has personal jurisdiction over a Defendant. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). First, the court considers whether the pertinent state statute governing personal jurisdiction is satisfied. *Id.* Second, the court must determine "whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment." *Louis Vuitton*, 736 F.3d at 1350.

### A. Florida's Long-Arm Statute

Florida's long-arm statute provides for two types of personal jurisdiction: specific and general. *Id.* at 1352. "General personal jurisdiction exists when a defendant is engaged in substantial and not isolated activity within [the] state … whether or not the claim arises from that activity." *Id.* (internal quotation marks and citation omitted). Specific personal jurisdiction, on the other hand, exists over causes of action arising from a defendant's contacts with Florida that are related to the plaintiff's claims. *Id.* The Eleventh Circuit has held that Florida's long-arm statute's reach is a question of state law, and federal courts shall follow the statutory constructions made by the Florida Supreme Court and Florida's District Courts of Appeal. *Id.*

Here, Plaintiffs assert this Court has personal jurisdiction under Florida's long-arm statute because: (1) Defendants sell sound recordings and license music to be distributed in Florida; (2)

5

Defendants have committed a tortious act within Florida that caused damages to Plaintiffs; (3) at the time Defendants' actions caused Plaintiffs' injury, Defendants had put sounds recordings on the market that "were used and consumed within Florida in the ordinary course of [business]"; and (4) Defendants engaged in activity in Florida such as attending meetings and distributing and selling copyrights. [ECF No. 1 at 2]. Plaintiffs' claims, as it relates to this case, really boils down to the same thing: that Defendants engaged in tortious conduct which caused injury to Plaintiffs in Florida. As such, Plaintiffs rely upon Florida Statute Section 48.193(1)(a)(2), which provides in relevant part that:

> (1)(a) A person, whether or not a citizen or resident of this states, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> …
>
> 2. Committing a tortious act within this state[.]

Fla. Stat. § 48.193(1)(a)(2). A defendant commits a tortious act under the statute as long as the act causes injury in Florida. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir. 1999) (noting that the Eleventh Circuit "interprets subsection [48.193(1)(a)(2)] to apply to defendants committing tortious acts outside the state that cause injury in Florida"). Copyright infringement constitutes a tortious act under § 48.193. *See, e.g., Foreign Imported Prods. & Pub., Inc. v. Grupo Indus. Hotelero, S.A.*, No. 07-22066-CIV, 2008 WL 4724495, at *5 (S.D. Fla. Oct. 24, 2008) (concluding copyright infringement constitutes a tortious act under Florida's long-arm statute); *Roof & Rack Prods., Inc. v. GYB Inv'rs, LLC*, No. 13-80575-CV, 2014 WL 3116413m at *2 (S.D. Fla. July 8, 2014) (noting that "[c]opyright infringement is a tortious act, and a person who infringes upon a copyright whose owner resides in Florida causes injury inside the state").

Where the purported intellectual property infringement occurs online, the posting of an infringing item on a website may cause injury and occur in Florida "by virtue of the website's accessibility in Florida," regardless of where the material was posted. *Louis Vuitton*, 736 F.2d at 1353–54. Mere accessibility of the website in Florida by itself, however, is insufficient to satisfy Florida's long-arm statute. *Oviedo v. Ramirez*, No. 21-cv-23750, 2022 WL 1641865, at *7 (S.D. Fla. May 24, 2022). Rather, an injury occurs "in Florida by virtue of the plaintiff's residence in Florida ***plus*** the accessibility of the website in Florida." *Id.* (emphasis in original).

As an initial matter, it should be noted that in the Complaint, Plaintiffs do not specify whether it is alleging Defendants are subject to general or specific jurisdiction under Florida's long-arm statute. In the Complaint and its Response to Defendants' Motion to Dismiss, however, Plaintiffs focus almost entirely on arguments related to specific jurisdiction. Additionally, in their Motion to Dismiss, Defendants raise no arguments concerning Florida's long-arm statue, and instead focus entirely on the Due Process analysis. *See generally* [ECF No. 21 at 8–15]. As such, the Court will first evaluate specific jurisdiction.

Here, Florida's long-arm statute is satisfied. Plaintiffs are both corporations that have their principal places of business in Miami-Dade County, Florida. [ECF No. 1 at 1]. As such, any infringing activity Defendants engaged in would make Florida the situs of the injury. *See AppSoft Dev., Inc. v. Diers, Inc.*, No. 3:13-CV-1520-J-32JBT, 2014 WL 3893316, at *2 (M.D. Fla. Aug. 8, 2014) ("In copyright infringement cases, the situs of injury is generally the state where the copyright owner resides") (citation omitted). Further, Plaintiffs allege, and Defendants do not contest, that Defendants claimed an ownership interest in Bounce on websites accessible in Florida. [ECF Nos. 1 at 4; 30 at 7–11]. Therefore, Plaintiffs have demonstrated their residence in

Florida *plus* the websites with infringing content accessibility in the state. As such, Plaintiffs' Complaint includes facts sufficient to satisfy Florida's long-arm statute.

### B. Due Process

With Florida's long-arm statute satisfied, the Court must next consider whether exercising personal jurisdiction over Defendants comports with Due Process. For the reasons detailed below, the Court agrees with Defendants that the Court should not exercise personal jurisdiction over them, because doing so would be violative of Due Process.

The Constitution prohibits a court from exercising personal jurisdiction over a non-resident defendant unless his or her contacts with the forum state are such that they have fair warning that they may be subject to suit there. *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008). In specific jurisdiction cases, such as this one, the Eleventh Circuit has laid out a three-part test "which examines: (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 1355 (internal quotation marks and citations omitted). The plaintiff bears the burden of establishing the first two prongs. *Id.* If the plaintiff does so, however, "a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (internal quotation marks and citation omitted).

### i. Prong One: "Arising Out of" or Relatedness

This first prong requires a court to ascertain whether the plaintiff's claims "arise out of or relate to at least one of the defendant's contacts with the forum." *Fraser v. Smith*, 594 F.3d 842,

850 (11th Cir. 2010) (internal quotation marks and citation omitted). "[A] relationship among the defendant, the forum, and the litigation is the essential foundation of *in personam* jurisdiction…." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (internal quotation marks and citation omitted).

In the instant case, the connection between Defendants' purportedly infringing actions and this forum is limited to the accessibility of websites on which Defendants have claimed to be partial owners of Bounce, and that Defendants' infringing activities have caused Plaintiffs harm in this state. *See generally* [ECF No. 1]. In an affidavit, Defendant Moelis attests to the limited nature of his and Lastrada's contacts with Florida. Lastrada is a New York corporation that has maintained its principal place of business there since it was formed thirty-five years ago. [ECF No. 21-1 at ¶¶ 3–4]. Further, Moelis avers that neither he nor Lastrada have ever applied for business licenses, owned or leased realty, maintained an office or agency, or maintained a bank account in Florida. [*Id.* at ¶¶ 8–14]. Neither has Moelis or Lastrada ever advertised or solicited business in Florida, had any contractual relationships with retailers or distributors, or been a party to litigation in the state. [*Id.* ¶¶ 15–17]. Perhaps most importantly, Defendants do not directly market, advertise, or sell any recordings to Florida residents. [*Id.* at ¶¶ 18–20]. Rather, Lastrada relies on Atlantic Records, another record company based in New York, to arrange for distribution of the copyright interests to third parties such as iTunes, Spotify, and Amazon. [*Id.*]. As such, Lastrada and Moelis have never manufactured or distributed copies of the composition or sound recording for Bounce. [*Id.*]. In 2002, they did, however, issue a license for Bounce to an entity in Florida. [*Id.* at ¶ 24].

Additionally, the parties quibble over Defendants' knowledge of Plaintiffs' residence in Florida. Defendants contend they were unaware that Plaintiffs were located in Florida. [ECF No. 21 at 12–13]. Defendants note that Brunswick is not a Florida corporation and despite the

9

Complaint identifying Brunswick's principal place of business as Miami-Dade, Florida, its website and Facebook page list its contact information as a North Carolina address and telephone number. [*Id.*]. As for Exuma, Defendants aver that the last time they dealt with Exuma "was an audit in 2001 at Plaintiffs' predecessor-in-interest's office in New York concerning Bounce … [and the] last address Defendants have on file for [] Exuma is in correspondence from 2002 which indicated that Exuma's predecessor, Tarnopol Music, Inc. … had offices in New York." [*Id.* at 13]. Plaintiffs counter with the affidavit of Paul Tarnopol (Chief Operating Officer of Brunswick and Exuma), emails attached thereto, and Florida Sunbiz webpages listing their Florida addresses, which they ague establish that "[D]efendants knew they were interfering with plaintiffs, who were based in Florida." [ECF No. 30 at 7–8].

This evidence, however, fails to establish Defendants' actual knowledge of Plaintiffs' residency in Florida. First, the emails Plaintiffs produced largely include Tarnopol in discussion with third parties about licensing Bounce for use in a television show. While certain of these emails include a signature block for Tarnopol listing Florida addresses for Exuma and Brunswick, these emails were sent to third parties, and not to Defendants. Although Moelis was eventually included in the email chain, there is no indication that this portion of the email chain included any information identifying Plaintiffs as being located in Florida. Nor is there any indication that Defendants actually viewed Plaintiffs' publicly available Sunbiz or BMI pages. In short, this evidence fails to establish Defendants had actual knowledge of Plaintiffs' Florida residency. At most, it may establish that Defendants perhaps could have discovered or even should have known this information. It does not, however, establish actual knowledge.

Therefore, the Court is left to determine whether the accessibility of the websites in Florida and Plaintiffs injury occurring here are sufficient to satisfy this first prong. Courts have held that

even where a defendant's contacts with a forum are "minimal," such contacts may be enough under this first prong where the contacts are "the direct cause of [the] [p]laintiff's claims." *See Mighty Men of God, Inc. v. World Outreach Church of Murfreesboro Tennessee, Inc.*, 102 F. Supp. 3d 1264, 1272 (M.D. Fla. 2015) (noting that "[a]t least in the case of intentional torts, such claim-causing contact is sufficient to satisfy the first prong"); *see also Louis Vuitton*, 736 F.3d at 1356 (concluding that the first prong was satisfied where the defendant's "ties to Florida all involve[d] the advertising, selling, and distributing of alleged counterfeit and infringing Louis Vuitton goods into the state and accepting payment from Florida customers," thereby establishing "a direct causal relationship" between the defendant, the forum, and the plaintiff's trademark claims). The requisite contact with the forum "must be a 'but-for' cause of the tort, yet the causal nexus between the tortious conduct and the purposeful contact must be such that the out-of-state resident will have fair warning that a particular activity will subject [it] to the jurisdiction of a foreign sovereign." *Oldfield v. Pueblos De Bahia Lora, S.A.*, 558 F.3d 1210, 1222–23 (11th Cir. 2009) (internal quotation marks and citation omitted).

The bar to satisfy the "arising out of" or "relatedness" prong is admittedly a low one. In *Mighty Men*, the defendants "intentionally infringed [the] [p]laintiff's Marks by holding conferences, maintaining websites, and marketing products, all of which featured [the plaintiff's Marks]." 102 F. Supp. 3d at 1272. And although the defendants did not direct or conduct any of these activities in the forum state, the court concluded that these actions "resulted in contact with the forum in the form of [the plaintiff's] injury." *Id.* While these contacts were minimal, the court reasoned that the claim-causing contacts was the direct cause of the plaintiff's claims. *Id.* This reasoning is directly applicable to the instant case. Defendants here, like the defendants in *Mighty Men*, did not engage in any direct marketing, maintain business contacts, or similar activity in

11

Florida. Nonetheless, Defendants' alleged infringing conduct is the sort of claim-causing contact sufficient to satisfy the first prong.

### ii. Prong Two: Purposeful Availment

The second prong's purposeful availment requirement is designed to ensure "that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 417 U.S. 462, 475 (1985). In cases involving intentional torts, such as here, "there are two applicable tests for determining whether purposeful availment occurred." *Louis Vuitton*, 736 F.3d at 1356. Under the first, known as the "effects test, a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Id.* To satisfy this test, the tort must have been: "'(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state.'" *Id.* (quoting *Licciardello*, 544 F.3d at 1285–88). Under the second test, known as the "minimum contacts test," a court examines a defendant's contacts with the forum state to ascertain whether the contacts: "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Id.* at 1357.

Here, Plaintiffs have failed to make a *prima facie* showing of personal jurisdiction under either the "effects test" or the "minimum contacts test." As previously addressed, Defendants contacts with this forum are limited to websites accessible in Florida on which representations are made regarding ownership interests in Bounce, and Plaintiffs' injury occurring here. As such, this case is readily distinguishable from infringement cases in which the Eleventh Circuit has found

non-resident defendants had purposely availed themselves based on activity on a website accessible in Florida. *See Louis Vuitton*, 736 F.3d 1357 (finding the defendant's actions of purposefully soliciting business from Florida residents through the use of an interactive website, receiving orders from multiple Florida residents, and shipping goods to Florida, taken together, "establish that [the defendant] purposefully availed himself of the privileges of doing business in South Florida"); *see also Licciardello*, 544 F.3d at 1288 (concluding that under the "effects test" the defendant had purposefully availed himself to suit in Florida by posting a musician's photograph, name, and apparent endorsement on a website, where the musician was the defendant's former client, and the defendant knew he resided in Florida, and had previously accompanied the musician on trips to Florida for business purposes).

      Here, however, Plaintiffs have only managed to show the website's accessibility in Florida and that their injury occurred here. That is insufficient under the purposeful ailment prong. *See Walden v. Fiore*, 571 U.S. 277, 290 (noting that "mere injury to a forum resident is not a sufficient connection to the forum … [t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way"). And that is what is absent here; any meaningful connection with the forum aside from the website or Plaintiffs' injuries. Thus, Plaintiffs fail to satisfy the "minimum contacts test" for the same reasons they fail to satisfy the "effects test." Defendants' connections with this forum as it relates to this action is insufficient for them to have availed themselves to the benefits of conducting business in this state. Further, Plaintiffs have proffered nothing to show Defendants should have reasonably expected to have to defend themselves in court in this forum.

### iii.     Prong Three: Fair Play and Substantial Justice

Plaintiffs' claims fail on the "fair play and substantial justice" prong as well. In evaluating the third prong, courts "consider these factors: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Louis Vuitton*, 736 F.3d at 1358.

As to the first factor, Defendants argue they would face a significant burden in having to defend the lawsuit in this District. [ECF No. 21 at 13]. As support for this contention, Defendants assert that "[l]itigation in and trial in Florida would be disruptive to Defendants' business in New York as it is a small, family run business." [*Id.*]. Defendants also contend that "Lastrada's two employees, Stephen [Moelis] and his brother Larry, live in New York and New Jersey, and all witnesses and relevant documents would necessarily be located in New York." [*Id.* at 14]. Further, none of the non-party witnesses are located in Florida. [*Id.*]. Plaintiffs offered no arguments in rebuttal. *See* [ECF No. 30 at 6–8].

Defendants' burden-argument is persuasive. Requiring Defendants to defend this suit in a district to which it has essentially no contact, where very little (if any) pertinent documentation or other evidence is located, and where no non-party witnesses are found, does not serve traditional notions of fair play and substantial justice. As such, the first factor weighs against Plaintiffs.

Next, this forum's interest in adjudicating this dispute is minimal. To be sure, "Florida has a very strong interest in affording its residents forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Licciardello*, 544 F.3d at 1288. Notwithstanding, the issues involved do not implicate Florida law. Aside from Plaintiffs' injuries occurring in Florida,

14

none of the events giving rise to Plaintiffs' claims took place in this District. Rather, the locus of Defendants' alleged infringing conduct is New York.

The third factor also fails. Although Plaintiffs' certainly have an interest in obtaining convenient and effective relief in this matter, they have presented nothing to indicate that litigating this dispute in New York would in any way prejudice their ability to prosecute this case. Nor have they presented any compelling reason as to why this forum would offer the most effective relief. While this forum likely would be the most convenient for Plaintiffs given that they are located here, the most effective forum would be where the majority of relevant evidence would be located. That forum appears to be New York.

Lastly, while the judiciary undoubtedly has an interest in resolving this dispute, the record that has been developed in this district is relatively sparse. At this point in the litigation the case could adequately be able resolved with minimal disruption if moved to the proper forum. Consequently, these four factors, in total, weigh in Defendants' favor. As such, this Court should not exercise jurisdiction over Defendants because to do so would not comport with the Fourteenth Amendment Due Process Clause.

## II.     Transfer of Venue

Plaintiff has requested that if this Court were to conclude it lacks personal jurisdiction over Defendants, that it transfer the case to the Southern District of New York in lieu of dismissing the case. "The interests of justice generally favor transferring a case to the appropriate judicial district rather than dismissing it." *Hemispherx Biopharma, Inv. v. MidSouth Cap., Inc.*, 669 F. Supp. 2d 1353, 1359 (S.D. Fla. 2009). "A transferee court must sit within a district in which the case originally could have been brought, both with respect to venue and personal jurisdiction." *Id.* (internal quotation marks and citation omitted). Courts may transfer a case even when it lacks

personal jurisdiction over the defendants. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465–67 (1962) (quoting 28 U.S.C. § 1406(a)).

In their reply, Defendants never rebut that the interests of justice favor transfer. Nor do they make any argument that the Southern District of New York would not be the proper forum. Nor could they, as the Southern District of New York is where Defendant Lastrada maintains its principal place of business and where Defendant Moelis resides and is a district "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). As such, transfer of this case, rather than dismissal, serves "the interest of justice." 28 U.S.C. § 1406(a).

Finally, as the proper forum for this matter is the Southern District of New York, that court should decide the remaining issues raised in the Motion to Dismiss regarding service of process and the sufficiency of the Complaint.

## **CONCLUSION**

For the foregoing reasons it is **RECOMMENDED** that Defendants' Motion to Dismiss [ECF No. 21] be **GRANTED IN PART AND DENIED IN PART**, and that the case be **TRANSFERRED** to the United States District Court for Southern District of New York pursuant to 28 U.S.C. § 1406(a).

Objections to this Report may be filed with the district judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 29th day of November, 2022.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:   **United States District Judge Roy K. Altman;**

   **All Counsel of Record**